**UNITED STATES of America**

**v.**

**Harold W. BARBOUR, Appellant.**

**No. 22335.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 25, 1969.

Decided Oct. 9, 1969.

---

5. Fed.R.Crim.P. 52(a).

Mr. John P. Wenchel, II, Washington, D. C. (appointed by this court) for appellant.

Mr. Sandor Frankel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was tried before a jury in the District Court upon an indictment charging housebreaking [1] and grand larceny [2] consisting in the theft of a console from an apartment. The tenant thereof, Juanita A. Young, testified that she left the apartment about 4:30 p. m. on March 11, 1967, and that her combination radio-television-phonograph was stolen during her absence.[3] A 12-year old boy testified that he saw appellant roll the console out of the apartment into a truck and ride away.[4] The defense was an alibi, predicated on testimony by two brothers, Raleigh and Lloyd Haskins, who resided next door to appellant, that he was at their home for at least a half hour from 5:30 p. m. on the offense date,[5] and on testimony by appellant's wife that appellant arrived at his own home just before 8:00 p. m.[6] The jury accepted the Government's evidence and convicted.

This appeal presents but one issue, arising from the trial judge's questioning of the Haskins brothers on certain aspects of the testimony they gave in support of appellant's alibi claim.[7] Appellant contends that the questioning amounted to advocacy against the alibi theory in the presence of the jury, and constituted error for which the conviction must be reversed. We disagree, and so we affirm.

A trial judge is not "a mere moderator";[8] his function extends to necessary assistance to "the inexperienced laymen in the [jury] box in finding the truth in the confusing conflicts

---

1. D.C.Code § 22–1801 (1967), since amended (Supp. II 1969).

2. D.C.Code § 22–2201 (1967).

3. The record indicates that this was a first-floor apartment, the intruder's access to which was gained through an unlocked rear window. Appellant knew Mrs. Young through his friendship with her niece, who lived with her until two weeks prior to the offenses, and appellant had occasionally visited the niece in the room where the combination stayed.

4. According to the testimony of this witness, appellant, whom he knew, knocked on the door to the apartment and was told by the witness that Mrs. Young was not at home. Appellant then went to the rear of the building and very shortly thereafter the witness saw lights go on in the apartment, followed by appellant's exit therefrom with the combination.

5. See note 29, infra.

6. Appellant did not testify at the trial.

7. The judge delved into the witnesses' familiarity with appellant's employment, the type of motor vehicle he drove, and the times at which he allegedly arrived at and departed from the witnesses' house.

8. Billeci v. United States, 87 U.S.App.D.C. 274, 282, 184 F.2d 394, 402, 24 A.L.R. 2d 881 (1950). See also Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

of contradictory evidence." [9] His participation in the examination of witnesses may well be justified where the testimonial presentation promotes fuzziness, as where testimony is inarticulately or reluctantly given.[10] Thus we have recognized "the right of a trial judge to make proper inquiry of any witness when he deems that the end of justice may be served thereby and for the purpose of making the case clear to the jurors." [11] We have also acknowledged that, to achieve such objectives, the inquiry may be directed to alibi witnesses for the defense.[12]

Nonetheless, the judge must remain "a disinterested and objective participant in the proceedings," [13] and principles both fundamental and indestructible in our criminal law exhort him to hold to a minimum his questioning of witnesses in a jury trial. Interrogation of witnesses tends to assimilate the court's role with the advocate's,[14] and may tread over the line separating the provinces of judge and jury.[15] The presumption of innocence may be jeopardized by an assumption of guilt radiated by overzealous quizzing by the judge,[16] and the right to fair trial may be imperiled by an apparent breach of the atmosphere of judicial evenhandedness that should pervade the courtroom.[17] There is the risk that the questioning may bear "the seeds of tilting the balance against the accused" [18] and place "the judge in the eyes of some jurors, on the side of the prosecution." [19] There is also the danger that the judge may elicit from the witness responses hurtful to the accused—responses to which the jury may assign peculiar weight because of their ostensible judicial sponsorship.[20]

It is for reasons of this caliber that we have admonished that "in a jury

9. Billeci v. United States, *supra* note 8, 87 U.S.App.D.C. at 282, 184 F.2d at 402.

10. Jackson v. United States, 117 U.S.App. D.C. 325, 329 F.2d 893 (1964).

11. Griffin v. United States, 83 U.S.App. D.C. 20, 21, 164 F.2d 903, 904, cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948). See also Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Jackson v. United States, *supra* note 10, 117 U.S.App.D.C. at 325, 329 F.2d at 893; Roberts v. United States, 109 U.S.App.D.C. 75, 76–77, 284 F.2d 209, 210–211, cert. denied, 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961).

12. Roberts v. United States, *supra* note 11, 109 U.S.App.D.C. at 76–77, 284 F.2d at 210–211.

13. Billeci v. United States, *supra* note 8, 87 U.S.App.D.C. at 283, 184 F.2d 403. See also Blunt v. United States, 100 U.S.App.D.C. 266, 276–277, 244 F.2d 355, 365–366 (1957); Hawkins v. United States, 114 U.S.App.D.C. 44, 47–48, 310 F.2d 849, 852–853 (1962).

14. "[T]he responsibility for producing the evidence which will persuade twelve jurors of guilt beyond a reasonable doubt is upon the prosecutor. It is a serious public responsibility, but it is upon the prosecutor and upon him alone. The judge has no part in that task. The prosecutor represents society in the prosecution. The attorney for the defense represents the accused. The judge is a disinterested and objective participant in the proceeding. 'Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge.'" Billeci v. United States, *supra* note 8, 87 U.S.App.D.C. at 283, 184 F.2d at 403, quoting United States v. Marzano, 149 F.2d 923, 926 (2d Cir. 1945).

15. Blunt v. United States, *supra* note 13, 100 U.S.App.D.C. at 276, 244 F.2d at 365. See also Billeci v. United States, *supra* note 8, 87 U.S.App.D.C. at 283, 184 F.2d at 403.

16. See United States v. DeSisto, 289 F.2d 833, 834–835 (2d Cir. 1961); United States v. Brandt, 196 F.2d 653, 656 (2d Cir. 1952).

17. Blunt v. United States, *supra* note 13, 100 U.S.App.D.C. at 276, 244 F.2d at 365, where we felt that the trial judge's questioning "took on the aspect of advocacy." See also Wallace v. United States, 281 F.2d 656, 664–665 (4th Cir. 1960); Blumberg v. United States, 222 F.2d 496, 501 (5th Cir. 1955).

18. Jackson v. United States, *supra* note 10, 117 U.S.App.D.C. at 326, 329 F.2d at 894.

19. *Id.*

20. *Id.* See also text *infra* at notes 22–23.

case, a trial judge should exercise restraint and caution because of the possible prejudicial consequences of the presider's intervention." [21]  For "jurors hold the robed trial judge in great awe and reverence" [22] and "his lightest word or intimation is received with deference, and may prove controlling." [23]  Like the Seventh Circuit, "[w]e realize that an alert and capable judge at times feels that he can assist in developing the evidence by participating in the interrogation of witnesses" [24] but, particularly with alternatives available,[25] "he would ordinarily do well to forego such intrusion upon the functions of counsel, thus maintaining the court's position of impartiality, in the eyes of the ever-observant jurors." [26]

In the case at bar, the judge's questioning of the Haskins brothers, though somewhat extensive, did not in our view overstep the bounds of propriety.  Despite the best efforts—indeed, praiseworthy efforts—of counsel on both sides, the testimony of each of these witnesses left something to be desired in terms of one's understanding of it. By our reading of the trial transcript, the judge's inquiries were efforts toward much needed clarification rather than challenges of the testimony.[27]  We feel that the record justifies the judge in such an endeavor, and that it was not pursued to excess.

Moreover, these and other circumstances combine to persuade us that in any event the questioning complained of could hardly have been prejudicial to appellant.  It was not significantly different in nature from the judge's questioning of Mrs. Young, a vital witness for the Government.[28]  Importantly, even full acceptance of the testimony of the Haskins brothers would still have left the jury free to find that appellant committed the offenses, for even at face value that testimony would not have closed a gaping hole in appellant's alibi.[29]

---

21. *Id.*

22. See Hawkins v. United States, *supra* note 13, 114 U.S.App.D.C. at 47, 310 F. 2d at 852.

23. Starr v. United States, 153 U.S. 614, 626, 14. S.Ct. 919, 923, 38 L.Ed. 841 (1894).  See also Garber v. United States, 145 F.2d 966, 972 (6th Cir. 1944).

24. United States v. Carmel, 267 F.2d 345, 350 (7th Cir. 1959).

25. As we have had prior occasion to point out, "[i]f a trial judge has definite ideas as to what lines of inquiry ought to be pursued, he is free to call both counsel to the bench, or in chambers and suggest what he wants done." Jackson v. United States, *supra* note 10, 117 U.S. App.D.C. at 326, 329 F.2d at 894.

26. United States v. Carmel, *supra* note 24, 267 F.2d at 350.  See also Blumberg v. United States, *supra* note 17 ("it is far better for the trial judge to err on the side of [a]bstention from intervention in the case rather than on the side of active participation in it, especially when the major part, if not all of his interruptions and interventions, though by chance rather than by design, are, or seem to be, on, or tending to be on, the side of the government").

27. An understanding by the jury that such was the judge's purpose was facilitated by his instructions.  At the commencement of trial, the judge told the jurors that the responsibility was exclusively theirs to ascertain the facts from the evidence and assess the credibility of the witnesses.  The judge reiterated this theme in his general charge just prior to the jury's retirement to deliberate, and further instructed that his questioning of witnesses must not be taken as an indication as to how he felt the jurors should decide any factual issue.

28. Compare Young v. United States, 120 U.S.App.D.C. 312, 314, 346 F.2d 793, 795 (1965) ; Blumberg v. United States, *supra* note 17, 222 F.2d at 500.

29. The jury heard evidence, elicited by defense counsel, that the Government's boy-witness had fixed the time of appellant's removal of the combination from Mrs. Young's apartment at around 6:00 p. m. Both of the Haskins brothers testified that appellant arrived at their house about 5:30 p. m.  Raleigh Haskins stated that appellant left for a while about 6:30 or 7:00 p. m., but Lloyd Haskins put the departure at between 6:00 and 6:15 p. m., and appellant's wife said that appellant was in and out of his residence all evening.

There is to be considered, too, the on-the-spot evaluation of defense counsel [30] who, after completion of the judge's inquiries, submitted no additional questions to the witnesses, nor did he in either instance object to those propounded by the judge.[31] At most, the judge's examination of the two alibi witnesses is not likely to have had more than minimal effect upon the result reached by the jury. Certainly it did not rise to the magnitude of reversible error.

The judgment of appellant's conviction is

Affirmed.

The alibi evidence thus left open an opportunity for appellant to commit the offenses after leaving the Haskins' home, which was only about five blocks from the apartment.

30. Not appellant's counsel on appeal.

31. Compare Billeci v. United States, *supra* note 8, 87 U.S.App.D.C. at 282, 184 F.